

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GERALD C. MANN**
ATTORNEY GENERAL

Honorable C. H. Cavness
State Auditor
Austin, Texas

Dear Mr. Cavness:

Opinion No. O-5752
Re: Legal status of Texas Na-
tional Guard Armory Board
and related questions.

Reference is made to your letter of December 11, 1943, to which you attached certain documents for the review of this office in connection with our opinion on a number of questions presented in your letter. The questions are considered in the order presented.

"1. What is the legal status of the Texas National Guard Armory Board, that is, is it a State agency? If not, what particular type of corporation does it represent?"

The Texas National Guard Armory Board was created by the Legislature of Texas to act as the alter ego of the State for particular purposes. While it is an agency of the State it is also a special legal entity, having an individuality separate from the State with respect to the accomplishment of the purposes and duties imposed on it by law. Art. 5890b, V. A. C. S.; Texas National Guard Armory Board v. McGraw, 126 S. W. (2d) 627; Ortez v. Railroad Commission, 62 S. W. (2) 378.

"2. Does the above mentioned Houston Light Guard Veterans Association, Inc. property belong on the books of the Adjutant General's Department or should it be recorded on the books of the Texas National Guard Armory Board?"

House Concurrent Resolution No. 30 as adopted by the 46th Legislature, 1939, accepted on behalf of the State the property of the Houston Light Guard Veterans Association, Inc. for the use and benefit of the Houston Light Guard, now designated

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable C. H. Cavness, page 2

as Company G, One Hundred and Forty-third Infantry. The acceptance of the deed to this property vested title in the State. The Resolution provided that the deed be delivered to the Adjutant General, and that the building be designated as a Texas National Guard Armory. We are of the opinion that the instruments of conveyance should be kept in the custody of the Adjutant General's Department as is provided in Section 3 of Art. 5890b, which is as follows:

"Sec. 3. As and when any of the property owned by the Board shall be fully paid for, free of all liens, and all debts and other obligations incurred in connection with the acquisition or construction of such property have been fully paid, the Board shall donate, transfer and convey such property, by appropriate instruments of transfer and conveyance, to the State of Texas, and such instruments of transfer and conveyance shall be kept in the custody of the Adjutant General's Department."

"3. When the 36th Division Aviation Airport and Armory property has been paid for in full, should this property be recorded on the books of the Adjutant General's Department or should it be recorded on the books of the Texas National Guard Armory Board?"

"4. For the further guidance of all concerned, should land and buildings acquired or constructed by funds expended by the Texas National Guard Armory Board upon final payment, be recorded on the books of the Adjutant General's Department or the Texas National Guard Armory Board?"

The provisions of Sec. 3 of Art. 5890b control in this case also. When the property is fully paid for, it must be transferred to the State as provided by law; and the instruments of conveyance must be kept in the custody of the Adjutant General's Department.

Our discussion of your fifth question will be applicable to these questions also.

"5. In the event that any of the Armory property produces income, which is the case with the Airport property, as some of the hangers were leased to the Braniff

Honorable C. H. Cavness, page 3

Airways Corporation, also to the C. A. A., should
such revenue revert to the Adjutant General's De-
partment or to the Texas National Guard Armory Board
after such properties have been fully paid for and
deeded to the State of Texas?"

As we view the Texas National Guard Armory Board Act
in relation to your questions, we are of the opinion that the
Legislature intended the Act to have a dual purpose.

The first purpose was to create an agency, in the ab-
sence of an existing agency, with authority to cooperate with
the United States Government, by securing available federal
funds to construct National Guard Armories in the State. By
subsequent amendments the Board was given almost unlimited
power to accomplish this purpose.

The second purpose of the Act in effect made the Armory
Board the managing agency of the State in respect to all Texas
National Guard property. Section 2 of the Act provided that the
Board have charge of the maintenance and operation of all Texas
National Guard Armories, and all other property and equipment
necessary or useful in connection with them.

The two purposes, as we have expressed them, are not
in conflict.

In connection with this discussion we refer to our
Opinion No. O-5695, when we held that the Armory Board was
authorized to keep the income derived from the rental of the
Houston Airport property. That property was acquired and im-
provements made through cooperation with federal agencies. The
Armory Board borrowed money to furnish the State's part of the
cost. The rents and revenues were pledged as security. At
such time as that property, or any other in like condition, be-
comes free and clear of all debts and incumbrances, it is then
to be transferred to the State by appropriate instruments of con-
veyance as provided for in Section 3 of the Act. When the con-
veyance is effected the status of the Armory Board, in respect to
the particular property, is changed from owner to that of manag-
ing agent, and as such the Board must manage, control and main-
tain the property for the use and benefit of the Texas National
Guard.

When this change of status occurs, it is our opinion
that, in the absence of an express provision in the Armory Board

Honorable C. H. Cavness, page 4

Act, any funds derived from the renting of the property transferred to the State must be held by the Armory Board pending disposition of such funds by an appropriate Act of the Legislature.

In this later status as Managing Agent for the State, the Armory Board is dependent on legislative appropriations for funds to manage, maintain and operate Texas National Guard Armories, stables, hangers and other property used in connection with them.

The records of the Adjutant General's Department should reflect ownership in the State of all property free of debt. Such property should be carried on the books of the Armory Board in a proper manner reflecting maintenance and operating costs.

"6. Is there any statute or law requiring that the Adjutant General's Department or the Texas National Guard Armory Board submit any and all leases, deeds, and other instruments to the Attorney General for approval?"

The Constitution of Texas established the office of Attorney General and prescribed the duties of the office. Art. 4, Sec. 22. Under the General Laws of Texas, Art. 4399, V. A. C. S. it is provided that the office of Attorney General be available to render legal assistance to departments of Government.

While we do not know of a general law requiring the Adjutant General's Department or the Armory Board to submit the instruments mentioned in your question to the Attorney General for approval, the legal services of this department are available to those departments in such instance, and others, and to other departments of the State as well.

In accordance with your request we are returning to the office of the Adjutant General the three documents listed below:

"1. Resolution of Houston Light Guard Veterans Association, Inc., authorizing transfer of property to State of Texas.

"2. Photostatic copy of House Concurrent Resolution No. 30.

Honorable C. H. Cavness, page 5

"3.  Deed from the Houston Light Guard Veterans Association, Inc., to the State of Texas."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Jack W. Rowland
Assistant

JWR:gm
Encls.

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN